Samuel A. Spiegel, J.
Petitioner seeks to have set aside an order of certification dated April 14, 1967 and seeks a further order discharging her forthwith from the care and custody of the Narcotic Addiction Control Commission. On April 28, 1966 petitioner was arrested for forgery, petty larceny and grand larceny. On July 1, 1966 she was civilly committed under the old article of the Mental Hygiene Law (since repealed and replaced by the present art. 9, eft. April 1, 1967). After three months in Middletown State Hospital, petitioner was released on “ after care ” status. Subsequently, due to her failure to comply with after-care regulations, petitioner was rearrested on the original charges and her civil certification was set aside (such procedure being authorized by the former art. 9).
On April 5, 1967, the petty larceny charge was withdrawn, the felony charges were reduced to one count of petty larceny and petitioner pleaded guilty thereto. On April 14 petitioner was permitted to withdraw her guilty plea and substitute a non-guilty plea therefor. Petitioner then requested civil certification as a narcotic addict, pursuant to section 210 of the new Mental Hygiene Law, was duly examined at a facility of the State Narcotic Addiction Control Commission (NACO), and a report of said examination, which found her to be an addict, was rendered to the court. On April 26, 1967, petitioner was civilly certified to the care and custody of the NACC and, pur *774 suant to section 210 of the Mental Hygiene Law, the criminal charge pending against her was dismissed.
On February 27, 1969, petitioner moved in Criminal Court, Queens County, for resentencing on the theory that her certification under section 210 was void, in that the court lacked jurisdiction to order a medical examination at petitioner’s request, as a result of an arrest for a crime committed prior to April 1, 1967, the effective date of section 210. The court denied the application, noting that since all criminal charges pending against petitioner had been dismissed, the Criminal Court no longer had jurisdiction, and suggested that petitioner’s only recourse would be to pursue a remedy in the form of a habeas corpus proceeding.
Counsel for respondent advises that petitioner then obtained a writ of habeas corpus based on the contention that she was no longer addicted and thus was being illegally held. It appears that said writ was dismissed on a finding that petitioner was still addicted, which dismissal was unanimously affirmed by the Appellate Division, in July 1969 (32 A D 2d 1029).
Section 210 of the Mental Hygiene Law permits one arrested and pending trial on criminal charges, with certain exclusions not here relevant, to apply for civil commitment as a narcotics addict. Once the petition is granted, the court must proceed in accordance with section 206 of the Mental Hygiene Law, relating to civil commitment independent of any arrest for any crime, to determine if the petitioner is in fact a narcotics addict. If found to be addicted, the court may certify the petitioner, again in accordance with section 206, and all criminal charges are dismissed. Section 210 is silent on the question of a controlling date of a pending criminal charge. This is to be contrasted with section 208, providing for certification of an addict after conviction for a crime or offense, which specifies that no addiction examination can be ordered with respect to an arrest for a narcotics crime occurring prior to April 1, 1967 or with respect to an arrest for a nonnarcotics crime occurring prior to October 1,1967.
Petitioner contends that proceedings under section 210 are akin to those under section 208, so that the Criminal Court must be deemed to be without jurisdiction to order an addiction examination where the proceeding results from an arrest for a crime committed prior to April 1, 1967. (Here, the initial arrest and arraignment occurred on April 28, 1966.) Thus, petitioner contends that it was the intention of the Legislature that with respect to all addicts pending trial on the effective date of the new article 9 of the Mental Hygiene Law (the fact of petition *775 er’s addiction is not here in question), the Criminal Court was to be powerless to honor their desperate, voluntary pleas for treatment, and dispense only criminal punishment. This inhumane intent cannot be ascribed to our State Legislature nor to the many civic groups, medical societies and prominent leaders in government, including Governor Rockefeller who inspired and campaigned for this legislation. The intent and purposes incorporated in said legislation attest to this experimental rehabilitation program in hospitals, rather than languishing untreated and ignored in prison, in the never-ending search for a cure to our ever-growing narcotic addiction problem.
The omission of any reference in section 210 to any cut-off date with respect to pending criminal charges was not a legislative oversight. Cut-off dates were enunciated in section 208 because the addiction examination therein authorized is involuntary. The authorization under section 208 stems directly from the fact of criminal arrest and conviction, and the resultant certification under the Mental Hygiene Law to the NACO is in lieu of a criminal sentence under the Penal Code.
It is important to note that the medical examination ordered under section 210 is based solely on the voluntary petition of the addict and in no way flows from the prior criminal charge. The incorporation of the provisions of section 206 into section 210 demonstrates their inseparable interrelation. There is no basis for distinguishing between those addicts accused of crime, and those not so accused, either in terms of procedural safeguards afforded with respect to voluntary civil commitment proceedings or in terms of effective available date for such proceedings. (Cf. People ex rel. McNeill v. Morrow, 32 A D 2d 375.)
The court perceives that, behind petitioner’s stated position, lies the contention that commitment pursuant to section 210 is neither truly 1 ‘ civil ’ ’ nor truly voluntary. This view may have had some merit under the former article 9 provisions whereby the pending criminal charges were never dropped, but held over the head of the defendant until completion of the maximum commitment period, or satisfactory fulfillment of after-care regulations if sooner released. Under the new article 9, however, as already noted, an integral part of voluntary commitment under section 210, is the absolute dismissal of the pending criminal charges.
Under all of the circumstances presented the court is impelled, not merely to reject petitioner’s legal arguments, but also to question her good faith in securing this writ. It has been judicially declared, and but recently confirmed, that petitioner is addicted and in need of treatment. It has been judicially *776 declared that, by virtue of her voluntary election to seek treatment pursuant to section 210 of the Mental Hygiene Law, petitioner no longer stands in jeopardy of prosecution for her criminal acts. Having successfully avoided the legal consequences of her criminal conduct, petitioner now seeks to avoid the medical help she so willingly sought and evidently needs.
The court concludes that petitioner was legally certified after a physical examination emanating from her voluntary self-petition, made after the effective date of section 210, and is now being legally detained. Accordingly, the writ is dismissed and the petitioner remanded to the custody of the commission.